UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LEONARD BURDEN,

                         Petitioner,                    **DECISION AND ORDER**
                                                        No. 02-CV-0440
        -vs-

GARY H. FILION, Superintendent,

                         Respondent.

_____

## INTRODUCTION

Petitioner, Leonard Burden ("Burden"), filed this *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Wayne County Court on three

counts of criminal sale of a controlled substance in the third degree, three counts of criminal

possession of a controlled substance in the third degree, and one count of criminal possession of

a controlled substance in the seventh degree. The parties have consented to disposition of this

matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Burden's jury trial commenced on September 23, 1998, in Wayne County Court (Kehoe,

J.). At trial police investigator Brenda Roberts ("Roberts") testified that on December 16, 1997,

she was introduced to Shawn Krepp ("Krepp"), a confidential informant, who was supposed to

help her purchase narcotics in the Village of Lyons. T.333-35.[1] Roberts and Krepp went to 43

Water Street where they came upon a man whom Krepp identified as "Pluto" (*i.e.*, Burden)

---

[1]        Citations to "T.__" refer to the trial transcript.

standing outside. Krepp asked Pluto if he "ha[d] anything," to which he replied, "Yes, follow me upstairs." Both Roberts and Krepp followed Pluto upstairs, and both gave him $20 to purchase some crack cocaine. T.337. When Pluto returned to the apartment about forty-five minutes later, he handed Krepp two pieces of crack, which Krepp turned over to Roberts. T.337-38. At trial, based upon police investigation of the identity of Pluto, Roberts identified "Pluto" as Burden. T.338.

Krepp testified that Burden was not standing outside when they first approached the apartment building, but she stated that she and Roberts each paid Burden $20 in exchange for crack cocaine. Krepp confirmed that Burden first handed the drugs to her, and she handed them to Roberts. T.310-11. Krepp testified that she had known Burden for a few months prior to the drug sale; they had had sexual relations and "gotten high" together in the past. T.313. Krepp testified that Burden routinely would procure drugs for her, and that he purchased drugs for her on the night of December 16, 1997. T.314, 319, 323.

The prosecution presented proof of three other incidents involving Burden. On January 22, 1998, police investigator Alvarado ("Alvarado") was working in an undercover capacity with informant Richard Hartranft ("Hartranft"). The two were driving around Lyons in Hartranft's truck at about 8 o'clock in the evening on that date when Hartranft announced, "There's Pluto." T. 205-06. Alvarado had never met petitioner before. T.207. According to Alvarado's testimony, he and Hartranft stopped the truck and Burden approached the passenger side of the vehicle where Alvarado was sitting. Burden asked what they wanted, and Alvarado replied, "A forty." Burden instructed the two men to drive around to the parking lot behind 58 Water Street, where Burden got into the vehicle. Alvarado said that he wanted to purchase some crack cocaine, and

Burden said he wanted his money first. Alvarado demurred, stating that he wanted to see what he was purchasing first. Burden offered to leave Alvarado his Pittsburgh Steelers jacket as collateral; Alvarado refused. Burden then offered to hand over his Social Security card and birth certificate. T.210-11. Alvarado took the Social Security card and asked Burden what the number was; Burden read it off from memory. *Id.* At that point, Alvarado agreed to give Burden the money up front. Burden left and returned shortly thereafter with some crack, which he gave to Alvarado. T.213. Burden asked for a ride home to 43 Water Street, and Alvarado complied. Once back at Water Street, Burden asked if Alvarado was going to "take care of him," so Alvarado handed him ten extra dollars. T.214.

Hartranft testified that he only remembered saying "hello" to Burden before Alvarado started talking about the drug-buy. T.253. Hartranft stated that he had known Burden for about twenty years, having first met him in 1978 when he was a truck driver and Burden was picking apples. T.256. Hartranft testified that Burden gave the crack cocaine to Alvarado, and that Alavarado gave the buy money to Burden. T.254. Hartranft denied handling either the money or the drugs that night.

Burden testified regarding the incident with Hartranft and Alvarado. He recounted that Hartranft asked him, "Is there anything around[?]" According to Burden, Hartranft continued, "I been up there [43 Water Street] two or three time[s] and I got ripped off, me and my friends got ripped off." T.361. He testified that Hartranft said, "We will give you ten dollars if you go up there and get me a 40." Id. Burden stated that Hartranft handed him some money; he denied that Alvarado ever handed him any money. T.361-62, Burden then went inside and bought some crack cocaine from two unknown men. T.364. Burden confirmed that he had known Hartranft for

-3-

twenty years and stated that he used to "get high" with Hartranft and his girlfriend. T.363.

On January 24, 1998, Alvarado was working with a different informant, Gerald Ameele ("Ameele"). T.219. The two drove around to the back of 43 Water Street, tooted the horn, and waited there for a minute before they spied Burden on the balcony of the building. T.222. Burden invited Alvarado and Ameele inside and asked Alvarado what he wanted. T.223.  Alvarado told him, "a sixty," and gave him the money. Burden left to get the drugs. When he returned five or ten minutes later, he dumped several pieces of crack cocaine into Alvarado's hands. T.224.

Alvarado was driving around with Ameele again on February 6, 1998. They saw Burden and stopped to talk to them; Burden asked them for a ride to a gas station to buy some beer. T.227-28. When Burden finished buying his beer, he got back in the car and asked them what they wanted. Alvarado said that he wanted "a forty," so Burden had them drive over behind 43 Water Street. Alvarado testified that Burden went and got the drugs without getting any money up front, and then gave them to Alvarado in exchange for fifty dollars. T.231.

Ameele corroborated Alvarado's testimony regarding the details of the January 24 and February 6 drug buys. Ameele testified that he had known Burden for about two years. (Burden stated that he had known Ameele since 1991.) Ameele stated that on February 6, 1998, he recalled Burden saying that he did not know if there was any "coke" around and that he was going to the store. Ameele also testified that Burden indicated that he would see if he could them "a forty." T.284. Ameele recalled that he was the person on January 24, 1998, who asked Burden if "anything was around." T.282.

Burden testified that on January 24, 1998, Ameele asked Burden to get him (Ameele) and "his man" "some." Burden stated that he did not know Ameele's "man" (*i.e.*, Alvarado) although

he had seen him around. Burden told Ameele that he would get some drugs for him (Ameele). Ameele put forty dollars on a bench in the kitchen. Burden took it and purchased drugs from two unknown black males in the apartment building (who were different men from whom he purchased the drugs on January 22 and January 24), brought them back, and placed them on the baluster, where Ameele picked them up. Ameele gave Burden ten dollars for his time. T.369-73.

With respect to the February 6, 1998 transaction, Burden agreed that Ameele and Alvarado gave him a ride to the gas station for beer. T.375. Burden testified that Ameele said, "Will you see if anybody [is] around and get us a 40?" *Id.* Burden responded, "I'll see when I get back." T.376. When they dropped him off at 43 Water Street, Burden encountered "some guys" in the hallway. Burden testified that he returned to the car and told Ameele and Alvarado this. Burden said that Ameele asked him if he would get them "a forty" and offered Burden ten dollars for his trouble. Burden stated that he purchased "a forty" from two unknown black men with money received from Ameele and handed it to Ameele. T.377.

At trial, Burden's entire defense was based on the notion that he was a mere agent of the informant buyers. If the agency defense applied, Burden would not have been culpable in the sales of controlled substances charged in the indictment. *People v. LaVoie*, 304 A.D.2d 857, 857, 757 N.Y.S.2d 616 (App. Div. 3d Dept. 2003) ("Agency is not an affirmative defense, but rather 'may negate the existence of an essential element of the crime--the "sale[.]"'") (quoting *People v. Roche*, 45 N.Y.2d 78, 86, 407 N.Y.S.2d 682, 379 N.E.2d 208 (N.Y.), *cert. denied*, 439 U.S. 958 (1978)).

The jury returned a verdict convicting Burden of one count of criminal possession of a controlled substance in the seventh degree with respect to the Roberts/Krepp incident on

December 16, 1997, evidently accepting the agency defense with regard to this charge. The jury

convicted Burden of three counts of criminal sale of a controlled substance in the third degree

and three counts of criminal possession of a controlled substance in the third degree in the third

degree with respect to the drug buys on January 22, January 24, and February 6 involving

Alvarado. Burden was sentenced to an aggregate term of imprisonment of fourteen to twenty-

eight years.

The Appellate Division, Fourth Department, of New York State Supreme Court

unanimously affirmed his conviction on November 9, 2001. *People v. Burden*, 288 A.D.2d 821,

732 N.Y.S.2d 758 (App. Div. 4th Dept. 2001). The New York Court of Appeals denied leave to

appeal. *People v. Burden*, 97 N.Y.2d 751, 769 N.E.2d 357, 742 N.Y.S.2d 611 (N.Y. 2002).

Burden filed no motions for collateral relief in state court. This habeas petition followed in which

Burden raises the same claims that he presented to the state courts on direct appeal. All of the

claims appear to be fully exhausted and properly before this Court. For the reasons set forth

below, the petition is denied.

## DISCUSSION

### Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective

Death Penalty Act ("AEDPA") in 1996, a petitioner seeking federal review of his conviction

must demonstrate that the state court's adjudication of his federal constitutional claim resulted in

a decision that was contrary to or involved an unreasonable application of clearly established

Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual

determination in light of the evidence presented in state court.  *See* 28 U.S.C. § 2254(d)(1), (2);

*Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

**Merits of the Petition**

1.      **Insufficiency of the evidence**

On direct appeal, the Fourth Department rejected as "without merit" Burden's contention

that the prosecution failed to disprove his agency defense beyond a reasonable doubt. The court

stated,

> Whether defendant was a seller or was merely acting as an agent of the buyer was
> a question of fact for the jury. Here, defendant engaged in three separate drug
> transactions, was able to obtain crack cocaine each time on short notice,
> demonstrated familiarity with drug "slang," and, according to the undercover
> police officer [Alvarado], was willing to deal with him after he was introduced to
> defendant by a confidential informant known to defendant. Additionally,
> defendant's credibility was impeached on cross-examination with evidence of a
> prior conviction of criminal sale of a controlled substance. Viewing that evidence
> in the light most favorable to the People, we conclude that the People presented
> legally sufficient evidence to establish that defendant was the seller of a controlled
> substance and not an agent of the buyer[.]

*People v. Burden*, 288 A.D.2d at 821 (internal citations omitted).

Defendants challenging the sufficiency of the evidence to support their convictions bear a

"very heavy burden." *Knapp v. Leonardo*, 46 F.3d 170, 178 (2d Cir. 1995). When reviewing a

claim of insufficient evidence, courts must consider "whether, after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

(emphasis in original). The reviewing court must defer to the jury's "assessments of the weight of

the evidence and the credibility of witnesses," *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir.

1996), and may only grant habeas relief if the petitioner has shown that, "upon the record

evidence adduced at the trial *no* rational trier of fact could have found proof of guilt beyond a

reasonable doubt," *Jackson*, 443 U.S. at 324 (emphasis added); *see also Herrara v. Collins*, 506 U.S. 390, 401 (1993).

In the present case, the jury heard testimony of two police officers and three confidential informants. Burden's testimony was directed at establishing that he was an agent, acting a mere "extension" for the informants, whom he contends were the actual buyers. Burden testified regarding his prior relationships with the informants, their initiation of the drug transactions, and his efforts to obtain the drugs from various unknown sellers on behalf of the informants. On the other hand, the prosecution presented testimony that Burden had no prior relationship with undercover officer Alvarado before the January 22, 1998 buy, and that Alvarado "fronted" no money to Burden during either the January 24 or February 6 incidents. Instead, on those two occasions, Alavarado paid Burden for goods received.  "[F]aced with a record of historical facts that supports conflicting inferences[,]" a federal habeas court "must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326). Thus, this Court must assume that the jury at Burden's trial resolved any conflicting inferences to be drawn from his testimony and the undercover officer's testimony in the prosecution's favor. The Court cannot say that, based on all of the evidence produced at trial, *no* rational trier of fact could have found that the prosecution had not proven all of the elements of the crimes charged beyond a reasonable doubt. The Appellate Division's decision rejecting Burden's insufficiency-of-the-evidence claim certainly was not an unreasonable application of clearly established federal law.

**2.     Ineffective assistance of counsel**

Burden claims that he was denied the effective assistance of counsel because trial counsel

allowed him to testify "despite the *Sandoval*[2] ruling which permitted the prosecutor to cross-examine [him] regarding the underlying facts to a prior criminal sale of a controlled substance conviction in 1995." On direct appeal, the Fourth Department rejected Burden's claim that trial counsel was ineffective in deciding to have him testify at trial. The court held that defendant "received [the] effective assistance of counsel. Defendant's testimony was necessary to attempt to establish the agency defense, and thus defendant failed to demonstrate the lack of a strategic basis for the decision to allow defendant to testify[.]" *People v. Burden*, 288 A.D.2d at 822 (citation omitted).

A defendant claiming that he was deprived his Sixth Amendment right to the effective assistance of counsel at his trial must first demonstrate that his counsel's performance "fell below an objective standard of reasonableness" in light of "prevailing professional norms," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and then "affirmatively prove prejudice" arising from counsel's allegedly deficient representation, *id.* at 693. Proving prejudice requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id. Accord United States v. Cohen*, 427 F.3d 164, 167 (2d Cir. 2005); *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) (noting that a defendant "bears a heavy burden" under *Strickland*'s two-pronged test). In applying the *Strickland* standard, a reviewing court must make "every effort . . . to eliminate the distorting effects of hindsight" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted); *accord Cohen*, 427

---

[2] *People v. Sandoval*, 34 N.Y.2d 371 (1974).

F.3d at 167. The overriding concern in such a review is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Cohen*, 427 F.3d at 167 (quoting *Gaskin*, 364 F.3d at 468) (in turn quoting *Strickland*, 466 U.S. at 686)).

"Actions or omissions by counsel that '"might be considered sound trial strategy"' do not constitute ineffective assistance." *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 689) (in turn quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Courts judging trial counsel's performance under *Strickland* "are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005). As the Second Circuit has often noted, "'[t]he decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess.'" *Id.* (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (*per curiam*)).

Presented with the factual circumstances of Burden's case, trial counsel's decision to advise Burden to testify was reasonable; indeed, trial counsel essentially had no other viable defense strategies available to him. For instance, a defense of mistaken identification was no more likely to succeed than the agency defense, given the testimony of the two undercover officers and the confidential informants placing Burden at the scene of each drug transaction, as well as the fact that Burden turned over his birth certificate and Social Security card to Alvarado as "collateral" on one occasion. Although it opened the door to questioning about a prior drug conviction, having Burden testify was a calculated risk that, under the circumstances, was not unreasonable. Because Burden cannot show that trial counsel's performance was constitutionally

-10-

deficient, there is no need for this Court to consider the second prong of the *Strickland* test.

Habeas relief is not warranted on this claim.

3.      **Harsh and excessive sentence**

Burden claims that his indeterminate sentence of fourteen to twenty-eight years for a

conviction "for drug sales in the aggregate amount of less than $200 [was] harsh and excessive."

A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally

not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102,

1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state

judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v.

Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the

statute, its severity would not be grounds for relief here even on direct review of the conviction,

much less on review of the state court's denial of habeas corpus.")). A challenge to the term of a

sentence does not present a cognizable constitutional issue if the sentence falls within the

statutory range.  *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Ross v. Gavin*, 101

F.3d 687 (2d Cir. 1996) (unpublished opinion).  Because Burden's sentence does not fall outside

of the statutory range authorized by New York's Penal Law, his claim presents no federal

constitutional issue for this Court to review. *See id.*

4.      **Claims based on defects in the grand jury proceeding**

Burden claims that the prosecutor erred in failing to instruct the grand jury regarding the

defense of agency; Burden argues that if the grand jury had been so instructed, it would have

refused to indict him. To the extent Burden is asserting defects in the grand jury proceeding, such

a claim is not cognizable on habeas review because Burden was convicted by a jury after a trial.

The trial jury's guilty verdict necessarily renders any irregularities before the grand jury harmless as it establishes not only that there existed probable cause to indict the defendant, but also that the defendant was "in fact guilty as charged beyond a reasonable doubt." *United States v. Mechanik*, 475 U.S. 66, 68 (1986); *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (holding that habeas petitioner's "claims of impropriety before the grand jury in this case concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" . . . were "cured in the trial before the petit jury, which convicted"). Accordingly, this claim is not cognizable on habeas review.

**CONCLUSION**

For the reasons stated above, petitioner Leonard Burden's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
        VICTOR E. BIANCHINI
      United States Magistrate Judge

DATED:        March 17, 2006
              Buffalo, New York.

-12-
